FILED
2017 Nov-13  AM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| DOUGLASS VARDEN | ) |
| | ) |
|     Plaintiff, | ) |
| vs. | )   CIVIL ACTION NO. |
| | ) |
| JPMORGAN CHASE BANK, NA.; | ) |
| SPECIALIZED LOAN SERVICING, LLC; | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

COMES NOW Plaintiff Douglass Varden, by and through counsel, and
alleges the following causes of action against JPMorgan Chase Bank, NA
(hereinafter "Chase") and Specialized Loan Servicing, LLC (hereinafter "SLS"):

### Jurisdiction and Venue

A.  This Court has jurisdiction over the parties and subject matter of
this action based upon diversity of citizenship and the fact that the amount in
controversy is in excess of Seventy-Five Thousand Dollars ($75,000), exclusive
of interest and costs. Many of the acts and transactions which are the subject of
this complaint occurred within the Northern District of Alabama and within the
jurisdiction of this Court. Defendants have transacted business within the
Northern District of Alabama and within the jurisdiction of this Court. This
diversity jurisdiction is asserted pursuant to 28 U.S.C. §1332.

B.  Venue is proper in the Southern Division since Plaintiff resides in
Jefferson County, Alabama, the property subject of the related mortgage is

1

located in Jefferson County and a portion of the acts complained of occurred in Jefferson County.

## Background

1.      JPMorgan Chase Bank, N.A. ("Chase") held a mortgage loan executed by Douglass Varden ("Plaintiff") in 1999 and secured by the property and residence at 9059 Miller Road, Warrior, Alabama ("subject property").

2.      As a result of illness, Plaintiff lost his job and fell behind on his mortgage in 2016.

3.      Plaintiff communicated his difficulty in making the mortgage payments and was provided information to apply for a mortgage modification.

4.      By letter dated October 6, 2016, Mr. Varden was notified by Chase that he was "pre-approved" for a mortgage modification, and to begin making the Trial Period Payments for November and December 2016 and January 2017 in the agreed amount of $349.62 per month.

5.      Each of the Trial Period Payments ("TPP") were made by check or checking account draft, and accepted.

6.      As a result of successfully completing the TPP, Mr. Varden was mailed the permanent Modification Agreement by letter dated January 26, 2017.

7.      It was required that the agreement be signed and returned by 02/09/2017. Plaintiff signed and returned it via overnight mail and it was received by Chase on 02/08/2017.

8.      The modification agreement provided that the new payment would be in the amount of $349.62 and the cover letter stated that such amount included

covering a projected escrow shortage (spread over 60 months).  It further provided that the first payment under the new agreement would be due March 1, 2017.

9.      On February 27, 2017 Plaintiff received a letter informing him that the mortgage had been transferred from Chase to Specialized Loan Servicing, LLC ("SLS"). Credit report information indicates that the lender as of January 2017 was now Freddie Mac, so that SLS would be the mortgage servicer.

10.      Plaintiff also received a second letter from SLS, dated February 27, 2017, which stated that "the mortgage loan is in serious default."

11.      Plaintiff subsequently received letters dated March 2, 2017, March 6, 2017 and March 8, 2017, all from SLS regarding an "existing delinquency" and actions that needed to be taken.

12.      As provided in the modification agreement, Plaintiff made the first payment (March) in the amount of $349.62 by check to SLS.

13.      Plaintiff received yet another letter regarding delinquency and options dated March 22, 2017, well after the first payment had been received by SLS.

14.      Then Plaintiff received a letter dated March 27, 2017, which also included a check from SLS, dated March 14, 2017, in the amount of $349.62, representing Plaintiff's March payment, which SLS rejected because it claimed to be an insufficient amount.

15.      SLS further claimed in the letter that Plaintiff would need to pay $4,355.26 to "reinstate" the mortgage loan.

16.      Plaintiff immediately contacted SLS and informed them that he had executed a Modification Agreement with Chase that had him caught up on all

3

payments and that he had paid the proper amount. Plaintiff offered to fax the Modification Agreement to SLS; however, they said they needed to obtain it from Chase.  The SLS representative further indicated that it could take a while to get this straightened out and to disregard the late notices in the meantime.

17.     The first SLS statement, as well as all successive statements, contained additional charges which appear to be carried-over escrow charges, which would be contrary to the Modification Agreement.

18.     Plaintiff, or his spouse on his behalf, called SLS on several occasions to try to get the incorrect billing corrected, and were told that any payments for less than the full (incorrect) amount shown would be rejected.  So Plaintiff continued to wait for the billing problem to be corrected.

19.     Plaintiff or Plaintiff's spouse attempted to make payment over the phone, including an August payment to include all payments from March forward.

20.     Plaintiff received a Notice of Foreclosure from a law firm dated September 22, 2017.

21.     Plaintiff made a payment by certified check in the amount of $2,487.31 which was received by SLS on September 28, 2017, and was also rejected and mailed back.

22.     The Plaintiff's home was foreclosed on October 18, 2017.


**Parties**

23.     Plaintiff, Douglass Varden, at all times pertinent to this action was a resident citizen of Jefferson County, Alabama.

24.     Defendant JP Morgan Chase Bank, N.A. ("Chase") is a foreign corporation domiciled in Virginia.

25.     Defendant Specialized Loan Servicing, LLC ("SLS") is a foreign corporation with its principle place of business located in Highland Ranch, Colorado.

## COUNT I

### Wrongful Foreclosure

26.     The above paragraphs are adopted and incorporated, as if fully set forth herein.

27.     Plaintiff was clearly having financial difficulties, making him unable to pay his mortgage with Chase, which caused him to seek and obtain a mortgage modification agreement.

28.     Upon transfer of the mortgage to SLS, there were to be no carryover charges such as escrow shortage, etc., only the new payment amount of $349.62.

29.     SLS rejected the very first payment of $349.62, representing Plaintiff's March payment and insisted that plaintiff must reinstate the loan. SLS rejected the payment because it claimed it to be an insufficient amount.  This was in direct contradiction of the "Suspense" provision set forth on every SLS statement, which stated partial payments would be held in an account until the full payment was received; however, if the loan was in foreclosure the payment would be returned.

30.     Unwarranted charges continued to appear on each statement and

SLS refused to accept anything less than the full amount they claimed owed, causing plaintiff, who was in a fragile financial condition, to be unable to afford the payments.

31.     The October 18, 2017, foreclosure on Plaintiff's home was a direct result of SLS's improper handling of Plaintiff's mortgage, as set forth above.

32.     Moreover, upon information and belief, SLS lacked standing to initiate a foreclosure and as a result said foreclosure is void or voidable.

33.     As a direct result of the actions complained of, Plaintiff has been caused to suffer, and will continue to suffer great mental anguish, damage to his reputation and credit, as well as economic damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of compensatory damages, punitive damages, interest, costs and any other relief deemed just.

## **COUNT II**

### Breach of Contract

34.     The above paragraphs are adopted and incorporated, as if fully set forth herein.

35.     Defendants Chase and SLS had a contractual duty to properly service Plaintiff's mortgage loan.

36.  Furthermore, Chase had a duty, upon transfer of the loan to SLS, to provide accurate information to the successor regarding Plaintiff's account, including the existence of the Modification Agreement and correct escrow and other account information.

37.     In the alternative, should the facts reveal that Chase did indeed timely provide the above Modification Agreement and only charge those amounts it was lawfully able to charge under said agreement.

38.     Moreover, even after apparently having acknowledged the Modification Agreement, SLS charged more than allowed under said agreement for the monthly payment and in charging amounts it was not lawfully allowed to charge Plaintiff.  Furthermore, SLS rejected the first payment in breach of the Modification Agreement.

39.     As a result of Defendants' breach, Plaintiffs suffered damages:

A. starting out delinquent with the successor and current servicer of the mortgage loan;

b. being subjected to unwarranted late fees, interest and other charges;

d.  he has suffered  and continues to suffer mental anguish, including but not limited to the financial stress caused by Defendants' acts and omissions, as well as from the threats of and the eventual foreclosure on his home;

d. he has suffered damage to their credit;

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of compensatory damages, interest, costs and any other relief deemed just.


## <u>COUNT III</u>

Negligence

40.     The above paragraphs are adopted and incorporated, as if fully set forth herein.

41.     Defendant Chase had a duty to properly transfer accurate and complete information in a timely manner to the successor servicer of Plaintiff's mortgage loan, but due to its negligence, failed to do so, resulting in damages to Plaintiff.

42.     In the alternative, Chase did provide accurate and complete information in a timely manner to the successor servicer, SLS, and as a result of SLS's negligence, it failed to recognize the Modification Agreement or the terms therein.

43.     Plaintiff contacted and offered to provide documentation to SLS regarding the Modification Agreement, but SLS declined stating it would need to receive the agreement from Chase.

44.     Regardless of Chase's acts or omissions, SLS had a duty to verify this information after it was brought to its attention by Plaintiff, and either failed or refused to do so, due to its negligence, and rejected Plaintiff's first payment without justification and continued to charge Plaintiff amounts he did not owe, all as a result of its negligence.

45.     As a direct result of the Defendants' negligence, Plaintiff suffered the following damages:

a. starting out delinquent with the successor and current servicer of the mortgage loan;

b. being subjected to unwarranted late fees, interest and other charges;

d.  he has suffered  and continues to suffer mental anguish, including but not limited to the financial stress caused by Defendants' acts and

8

omissions, as well as from the threats of and the eventual foreclosure on his home;

d. he has suffered damage to their credit;

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of compensatory damages, interest, costs and any other relief deemed just.

## COUNT IV

### Fair Debt Collection Practices Act Violations

46.     The above paragraphs are adopted and incorporated, as if fully set forth herein.

47.     Defendant SLS is guilty of numerous violations under the Fair Debt Collections Practices Act ("FDCPA") in its attempts to collect mortgage payments it was not owed from Plaintiff.

48.     Defendant SLS is a "debt collector" as defined by the FDCPA, because when it acquired Plaintiff's mortgage loan it claimed Plaintiff was already in "default" and/or because it was collecting on behalf of  a third-party ("Freddie Mac"). Moreover, the debt being collected was a "consumer debt" and Plaintiff has been at all times a "consumer" as respectively defined by the FDCPA. And finally, every correspondence from SLS also acknowledged that they were a "debt collector."

49.     As set forth above, SLS was put on notice by Plaintiff that the charges on SLS's statements were incorrect, that there had been a Modification Agreement and further that the other charges included were unwarranted.

50.     Despite being repeatedly informed of this, SLS continued to contact Plaintiff in attempts to collect payments that were not owed.

51.     The communications from SLS included misrepresentations that upon transfer, Plaintiff was already "delinquent" was in "default," threats of being "foreclosure." Additionally, the monthly statements have reflected unwarranted charges.

52.     Defendants actions have violated the following provisions of the FDCPA (15 USC 1692e):

§ 807. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 (2)  The false representation of—

(A) the character, amount, or legal status of any debt;

 (4)  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

 (5)   The threat to take any action that cannot legally be taken or that is not intended to be taken.

 (8)  Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
§ 808. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)   The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

53.   As a direct result of the Defendant SLS's FDCPA violations, Plaintiff has incurred the following damages:

a. being subjected to unwarranted late fees, interest and other charges;

b.  he has suffered  and continues to suffer mental anguish, including but not limited to the financial stress caused by Defendant's acts and omissions, as well as from the threats of foreclosure and the actual foreclosure on his home;

c. he has suffered damage to his credit;

d. attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of compensatory damages, attorney's fees, interest, costs and any other relief deemed just.

## COUNT V

Real Estate Settlement Procedures Act (RESPA) Violations

54.   The above paragraphs are adopted and incorporated, as if fully set forth herein.

55.   Plaintiff, by letter dated September 23, 2017, informed SLS, among other matters, that he believed there to be unwarranted charges on his account.

56.   Despite being clearly put on notice that Plaintiff disputed said charges, SLS, in violation of section 6 of the Real Estate Settlement Procedures Act ("RESPA"), failed to acknowledge the complaint in writing within twenty (20) days; but instead, proceeded with the foreclosure process and ultimately

foreclosed on October 18, 2017.

57.    As a result of the violations of RESPA by Defendant SLS as set forth above, Plaintiff has suffered damages:

a.  he has suffered  and continues to suffer mental anguish, including but not limited to the financial stress caused by Defendant's acts and omissions, as well as from the threats of foreclosure and the actual foreclosure on his home;

c. he has suffered damage to his credit;

d. attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of treble damages, attorney's fees, interest, costs and any other available statutory relief or such other relief deemed just.

## COUNT VI

### Fair Credit Reporting Act Violations

58.    Plaintiff adopts and incorporates each paragraph above as if fully set forth herein.

59.    Section 623(a)(1) of the Fair Credit Reporting Act ("FCRA") requires the following:

(a) Duty of Furnishers of Information to Provide Accurate Information

(1) Prohibition

( A) *Reporting information with actual knowledge of errors.* A **person shall not furnish** any information relating to a consumer to any consumer reporting agency **if the person knows or has reasonable cause to believe that the information is inaccurate**.

( B) *Reporting information after notice and confirmation of errors.* A person shall not furnish information relating to a consumer to any consumer reporting agency if

(i) the person **has been notified by the consumer**, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the **information is, in fact, inaccurate**.

Moreover, section 623(a)(3) requires the following:

(2) *Duty to provide notice of dispute.* If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person **may not furnish the information** to any consumer reporting agency **without notice that such information is disputed** by the consumer. (emphasis added)

60.     Defendant SLS was given notice on several occasions, prior to the matter being reported to credit reporting agencies, that the debt subject of this action was disputed.

61.     Defendant Chase reported payments during the TPP, for November and December of 2016 and January of 2017, as being "180 days past due," despite all of these payments being accepted for those months under the TPP agreement.

62.     Defendants Chase and SLS have violated provisions of the Fair Credit Reporting Act including, but not limited to section 623.

63.     The failure to comply with the FCRA, including section 623, was committed willfully by Defendants as set forth in section 616, or alternatively, was done negligently, as set forth in section 617.

64.     As a direct result of Defendants' lack of FCRA compliance, Plaintiff was caused to suffer damages, including as follows:

a. mental anguish;

b. damage to his credit and credit worthiness;

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands an award of compensatory damages and/or statutory damages, punitive damages, attorney's fees, interest, costs and any other relief deemed just.

**COUNT VII**

**Injunctive Relief**

65.     The above paragraphs are adopted and incorporated, as if fully set forth herein.

66.     SLS's negligent/wrongful conduct, as set forth in the paragraphs above, has resulted in the foreclosure of Plaintiff's home.

67.     Furthermore, Plaintiff has been informed that an eviction action has been filed seeking to have Plaintiff and his family removed from their home.

68.     Plaintiff, being in immediate danger of imminent harm, due to foreclosure and the pending eviction by SLS, requests preliminary and permanent injunctive relief, enjoining SLS's agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff in violation of their contractual and other obligations undertaken and incurred in connection with the mortgage modification agreement.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the injunctive

relief set forth above, an award of compensatory damages, interest, costs and any other relief deemed just.

      /s/ F. Page Gamble_____
F. Page Gamble (ASB-3857-E31F)
F. PAGE GAMBLE, P.C.
300 Vestavia Parkway
Suite 2300
Birmingham, AL  35216
(205)795-2078
page@gamblelaw.net

Attorney for Plaintiff


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL TRIABLE ISSUES**

      /s/   F. Page Gamble_____
OF COUNSEL


**Please Serve Defendants by Certified Mail at:**

JPMorgan Chase Bank, N.A.
C T CORPORATION SYSTEM
2 NORTH JACKSON ST., SUITE 605
MONTGOMERY, AL 36104

Specialized Loan Servicing, LLC
c/o CAPITOL CORPORATE SERVICES INC
2 NORTH JACKSON ST., SUITE 605
MONTGOMERY, AL 36104